UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 03-21130-CIV-KING/O'Sullivan

GUIDEONE ELITE INSURANCE
COMPANY,

    Plaintiff/Counter-Defendants,

vs.

OLD CUTLER PRESBYTERIAN
CHURCH, INC., et al.

    Defendants/Counter-Plaintiffs.
_____/

## OLD CUTLER PRESBYTERIAN CHURCH, INC.'S CONCISE STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

Defendant/Counter-Plaintiff, OLD CUTLER PRESBYTERIAN CHURCH, INC. ("OCPC"), by and through its undersigned counsel, and pursuant to F.R.C.P. 56(a) and S.D.Fla.L.R. 7.5, submits this Concise Statement of Material Facts to which there are no genuine issues to be tried,[1] in support of its Cross Motion for Summary Judgment against the Plaintiff/Counter-Defendant, GUIDEONE ELITE INSURANCE COMPANY ("INSURER"), and further states:

---

[1] The testimony is taken from the depositions of INSURER's Corporate Representatives, the deposition of Jim Terrill, and the Affidavit of George Johnson, including the exhibits thereto. References to depositions will be by (D-(name of deponent) - Page__). References to Mr. Johnson's Affidavit, and any applicable exhibit, will be by (Aff. - GJ, Exh. ___).



CASE NO.: 03-21130-CIV-KING/O'Sullivan

1. J.A.W., E.W. and P.W. claim that on or about October 16, 2002, they were kidnapped from the premises of OCPC, and taken off the premises where they were assaulted and battered (Aff. GJ, Exh. "D").

2. On October 16, 2002, OCPC was the owner of an Insurance Policy issued by INSURER under Policy No. 1156-929, for the policy period covering September 27, 2002 through September 27, 2003 (Aff. GJ, Exh. "A").

3. On October 16, 2002, OCPC was the owner of an Umbrella Insurance Policy, issued by GuideOne Mutual Insurance Company Policy No. 1156-930, for the policy period covering September 27, 2002 through September 27, 2003 (Aff. GJ, Exh. "B").

4. The insurance policies were procured for OCPC through a domestic Florida insurance broker known as Florida Church Insurance Agency, Inc. ("FCIAI") (D-Jim Terrill - Page 6). FCIAI has been placing insurance with INSURER for ten (10) years (D-Jim Terrill - Page 29).

5. During discovery, Mr. Tom Farr was designated as, among other things, INSURER's corporate representative with most knowledge of "[a]ll policies of insurance issued by GuideOne to Old Cutler Presbyterian Church, Inc., covering the period of January 1, 2002 through December 31, 2003." (D-Tom Farr - Pages 6-7 & Exh. 1)

6. The certified copy of the insurance policy that had been produced by INSURER in discovery was not the policy that applied to the incident alleged by J.A.W., E.W., P.W. and J.S.W. (D-Tom Farr - Page 13).

CASE NO.: 03-21130-CIV-KING/O'Sullivan

7.    The insurance policy delivered to OCPC contains several grants of coverage (Aff. GJ, Exh. "A").

8.    The insurance policy contains a Commercial General Liability Coverage Form ("CGL") (Id.).

9.    After OCPC learned of the October 16, 2002, incident, it notified INSURER (D - Pat Hart - Page 19; D - Jim Terrill - Pages 35-36).

10.    On or about December 10, 2002, INSURER wrote a reservation of rights letter to OCPC, informing OCPC that there was no coverage for the entire claim under the terms of the CGL. INSURER took the position that the entire claim was excluded from the coverage afforded by the CGL, and was subject only to the coverage purchased by OCPC under a separate coverage form known as the Sexual Misconduct Liability Coverage Form. (Aff. GJ, Exh. "C"; D - Tom Farr - Pages 34 & 45; D - Pat Hart - Page 20.

11.    On or about July 25, 2003, Co-Defendants, J.A.W., E.W., P.W. and J.S.W., filed a lawsuit in Miami-Dade Circuit Court against OCPC (Aff. GJ, Exh. "D").

12.    The lawsuit filed by J.A.W., E.W., P.W. and J.S.W. against OCPC alleges that on October 16, 2002, J.A.W., E.W. and P.W. were kidnapped from OCPC's premises, taken to another location, and assaulted and battered. The words "rape" and/or "sexual misconduct" do not appear anywhere in the complaint. The complaint seeks to hold OCPC liable in damages based on theories of negligence (Id.).

13. Section I of the CGL, is entitled "COVERAGES". COVERAGE A of the CGL is for "Bodily Injury and Property Damage Liability", and provides, in pertinent part, as follows:

> **1. Insuring Agreement.**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .

(Id.).

14. The policy also contains a section entitled "ADDITIONAL EXCLUSIONS". Paragraph 3 of that section provides, as follows:

> The following exclusions apply under both COVERAGE A and COVERAGE B:
>
> 2. Any "personal and advertising injury", "bodily injury" and mental or emotional pain or anguish, sustained by any person arising out of or resulting from any actual or alleged act of sexual misconduct of any kind. The Company shall have no duty to investigate, settle, defend or pay any claim or "suit" asserting any act of sexual misconduct or any breach of duty contributing to such act.

(Id.).

15. The CGL policy also contains specific definitions. However, the term "sexual misconduct", is not defined in the CGL (Id.).

4

16. INSURER markets and sells the CGL policy to a number of non-profit entities. This would include the general liability coverage form (D-Tom Farr - Page 17).

17. The exclusion for sexual misconduct claims is contained in all CGL policies issued by INSURER to churches. It was not included in policies sold to denominational headquarters, colleges or universities (D-Tom Farr - Page 18).

18. In addition to the CGL coverage form, OCPC's insurance policy also contains a separate and distinct grant of coverage entitled "SEXUAL MISCONDUCT LIABILITY COVERAGE FORM" Paragraph one of this coverage form provides, in pertinent part, as follows:

> 1. **INSURING AGREEMENT.**
>
> We agree to cover your legal liability for damages because of bodily injury, sickness or disease, including death resulting from any of these at any time; mental anguish or emotional distress sustained by any person as a result of sexual misconduct which first commences during the policy period. We shall have the right and duty to investigate any claim, as described in this Coverage Form brought against you, and to defend any suit brought against you seeking damages, even if the allegations of the suit are groundless, false fraudulent, and we may make any settlement we deem expedient.
>
> This policy does not apply to claims made or suits brought against any person who actually participates in, directs, or knowingly allows to take place ay act of sexual misconduct. We shall have no obligation or duty to investigate, defend, settle or pay judgments on behalf of any such person as described in this paragraph.

(Aff. GJ, Exh. "A").

19. Unlike the exclusion for sexual misconduct claims contained in the CGL coverage form, the term "sexual misconduct" is defined in the sexual misconduct liability coverage form. It is defined as follows:

### 7. DEFINITIONS

3. "Sexual Misconduct or Sexual Molestation: is any activity which is sexual in nature, whether permitted or unpermitted, including but not limited to, sexual assault, sexual battery, sexual relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

"Rape" is not specifically included in the definition of "sexual misconduct" contained in the sexual misconduct liability coverage form (Id.).

20. When Mr. Farr was first hired by INSURER seventeen years ago, the policy forms in use did not contain this sexual misconduct exclusion. However, there was an exclusionary endorsement that was attached to general liability policies that excluded any and all claims arising out of sexual offenses of any nature (D-Tom Farr - Page 19).

21. In the Spring of 1987, INSURER altered its procedures and changed from issuing an endorsement to putting the exclusion right in the insuring provisions (D-Tom Farr - Page 20).

CASE NO.: 03-21130-CIV-KING/O'Sullivan

22. This was because prior to 1987, a number of claims arising out of sex offenses involving churches swept the insurance industry and caused substantial economic loss (D-Tom Farr - Page 20).

23. Before the proliferation of claims involving abuse by clergy and employees of religious institutions, insurance policies issued to religious institutions generally did not speak to the issue of sexual misconduct. Such claims were not specifically excluded from coverage. (D-Jim Terrill - Page 32).

24. The claim in the mid 1980's that affected GuideOne the most involved priests. GuideOne had to pay out a fair amount of money because a priest abused someone (D-Tom Farr - Page 21).

25. Mr. Farr wrote the sexual misconduct exclusion that was added to the CGL coverage in the mid 1980's (D-Tom Farr - Page 22).

26. Mr. Farr also wrote the Sexual Misconduct Liability Coverage Form (D-Tom Farr - Page 25).

27. The Sexual Misconduct Liability Coverage Form is a separate coverage. It requires a separate premium (D-Tom Farr - Page 26).

28. The additional exclusion in the CGL policy does not tell the reader what types of acts constitute sexual misconduct, but the definition of sexual misconduct in the Sexual Misconduct Liability Coverage Form does give those specifics (D-Tom Farr - Page 36).

29. The purpose of the CGL policy in general is to provide coverage to OCPC for claims made against it as a results of its acts or omissions (D-Tom Farr - Page 40).

CASE NO.: 03-21130-CIV-KING/O'Sullivan

30. INSURER could have put a more detailed definition of sexual misconduct in the CGL policy if it wanted to (D-Tom Farr - Pages 44-45).

31. The sexual misconduct exclusion in the CGL is the policy language supporting INSURER'S position that the claims of J.A.W.'s two minor children are also excluded from coverage (D-Tom Farr - Page 46).

32. Mr. Pat Hart was designated by INSURER as its corporate representative with the most knowledge of the investigation conducted by INSURER regarding the factual basis for the claim of damages made against OCPC by J.A.W. and her family (D - Pat Hart - Exhibit "A").

33. INSURER didn't know whether the underlying complaint filed by J.A.W. alleges that the motive of the kidnapper was solely rape (D-Tom Farr - Page 46).

34. INSURER couldn't explain how INSURER could know if this was a kidnapping that evolved into a rape, or what the motive of the assailant was (D-Tom Farr - Page 47).

35. Before denying coverage to OCPC under the CGL Coverage Form, INSURER never spoke with the kidnapper (D - Pat Hart - Pages 15-16).

36. Before denying coverage to OCPC under the CGL Coverage Form, INSURER never spoke with J.A.W.'s doctors (D - Pat Hart - Page 15).

37. INSURER was unable to confirm whether, before denying coverage to OCPC under the CGL Coverage Form, it spoke to J.A.W., her husband or her children (D - Pat Hart - Pages 16-17)

8

38.     INSURER reached its conclusion that the claims of J.A.W. and her family were excluded from the CGL, based on its unilateral determination that the nature of the incident was a sexual offense and that the subjective intent of the assailant was sexual (D-Tom Farr - Page 46; D - Pat Hart - Pages 32-33).

39.     The only evidence INSURER had of the kidnapper's motive is the description of his acts that it got from its investigation of the claim (D-Tom Farr - Page 47) or from the police report (D - Pat Hart - Page 34).

40.     INSURER has no personal, firsthand knowledge of what the kidnapper's intent was (D - Pat Hart - Page 34).

41.     INSURER inferred that the kidnapper's subjective intent was sexual from the facts it obtained as a result of its investigation of the incident (Id.).

Respectfully submitted,

By _____
ANDREW J. ANTHONY
Florida Bar No. 226319

By _____
BRADLEY A. SILVERMAN
Florida Bar No.: 0105333

CASE NO.: 03-21130-CIV-KING/O'Sullivan

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been faxed/mailed/hand-delivered on this 8th day of March, 2004, to: Roderick F. Coleman, Coleman & Associates, P.A., Attorneys for Plaintiff, 120 E. Palmetto Park Road, Suite 150, Boca Raton, Florida 33432; Mark Hicks, Esq., Hicks & Kneale, P.A., Attorneys for J.A.W., E.W., P.W. and J.S.W., 799 Brickell Plaza, 9th Floor, Miami, Florida 33131; Stephen A. Kandell, Esq., Kandell & Kandell, P.A., Attorneys for J.A.W., E.W., P.W. and J.S.W., 2665 S Bayshore Dr Ste 900, Coconut Grove, Florida 33133-5401; and Daniel S Schwartz, Esq., Wilson Elser Moskowitz et al, 100 S.E. 2nd Street, Suite 3800, Miami Florida 33131-2150.

THE LAW OFFICES OF
ANTHONY & ASSOCIATES, P.A.
Attorneys for Old Cutler Presbyterian Church, Inc.
250 Catalonia Avenue, Suite 505
Coral Gables, FL 33134
Tel: (305) 444-8927
Fax: (305) 445-9908

By _____
BRADLEY A. SILVERMAN
Florida Bar No.: 0105333

F Old Cutler GuideOne Pleadings msj concise statement of material facts wpd